FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOES and PKF-MARK III, INC., | |
| Plaintiffs | Civ. No. 08-607 (GEB) |
| v. | **MEMORANDUM OPINION** |
| CITY OF TRENTON DEPARTMENT OF PUBLIC WORKS – WATER DIVISION, | |
| Defendant. | |

### BROWN, C.J.

This matter comes before the Court upon the motion for injunctive relief of John Does and PKF – Mark ("Plaintiffs") enjoining the city of Trenton ("Trenton" or "the city") from disseminating names, addresses and social security numbers of PKF employees to any third party. The Court heard oral argument on March 25, April 21, and April 25, 2008 and announced its decision on the record on May 19, 2008, granting Plaintiffs' motion. This written opinion accompanies the May 19, 2008 oral decision.

### I. BACKGROUND

#### A. Allegations of the Complaint

PKF is a general contractor engaged in the business of construction on public works projects. (Compl. at ¶ 1.) Plaintiff John Does are PKF employees who have or will engage in work at the City of Trenton, Department of Public Works for the project known as the Trenton Water Works, Water Filtration Plant Pre-Treatment and Facilities Improvement Project ("the project"). (*Id.* at ¶ 2.)

PKF entered into a contract with Trenton to work on the project on April 27, 2007. (*Id.* at ¶ 7.) Pursuant to the New Jersey Prevailing Wage Act, PKF filed weekly certified payroll reports with the City of Trenton. (*Id.* at ¶ 12.) Since the project's inception, PKF prepared and submitted these reports, which initially included each employee's name, home address, social security number, job classification, hourly rate of pay, number of hours worked during the reporting period, wages and fringe benefits paid, and deductions made. (*Id.* at ¶ 15.) However, PKF asserts that because employees complained about being threatened, harassed, and subjected to other "offensive personal contact," it elected to redact certain personal information from the weekly payroll reports. (*Id.* at ¶¶ 16-17.) On October 5, 2007, PKF began submitting "revised reports" redacting the employees' names, addresses, and social security numbers. (*Id.* at ¶ 16.)

After being advised by the New Jersey Department of Labor ("DOL") that it was required to provide the information on the reports in un-redacted form, PKF alleges that it did so, but only after representatives of the City assured PKF that it would not furnish these records to any third parties without first notifying PKF and permitting it to take actions (such as the present motion before the Court) that PKF deemed necessary to protect itself. (*Id.* at ¶¶ 19-21.)

Plaintiffs allege that in response to a request made by the Foundation for Fair Contracting, Ltd. ("FFC"),[1] which was made pursuant to the New Jersey Open Records Act ("OPRA"), the City provided copies of PKF's Weekly Certified Payroll Reports, containing the personal information that was previously redacted. (*Id.* at ¶¶ 22-23.); Hr'g Tr. 13:6-9, Mar. 25, 2008. Plaintiffs assert that the City never contacted PKF "as it had promised." (*Id.* at ¶23.) The City does not dispute that it released the employees' personal information. However, the City

---

[1] Plaintiff maintains that the FFC is a proxy of the Building Trade Unions ("NJBTC").

2

maintains that it did so based upon a mis-communication.[2] The City also maintains (and it is not disputed by any of the parties) that it never actually released any of the employees' social security numbers.

As a result of the City's release of this personal information, on February 4, 2008, Plaintiff filed a complaint and motion for injunctive relief, seeking to enjoin the City from disseminating the names, addresses, social security numbers and other personally identifying information of any person employed on the project to any third party. Plaintiffs assert that the disclosure of this personal information violates the John Doe Plaintiff employees' right of privacy under the United States Constitution (Count I). Plaintiffs also assert that these personal disclosures have been exempted from the broad disclosure requirements of the Freedom of Information Act ("FOIA")(Count II) as well as OPRA (Count III).

### B. Procedural History

The John Doe Plaintiffs' union, The United Steelworkers of America Local 15024 (the "Steelworkers") filed a motion to intervene, which was granted by the Court. Hr'g Tr. 5:14-15, Mar. 25, 2008. The Utility and Transportation Contractors Association of New Jersey ("UTCANJ"), a non-profit trade organization with approximately 1,100 member firms (one of which is PKF) involved in "all phases of heavy, highway, site, utility, marine and environmental remediation construction in both the public and private sectors throughout New Jersey," sought and was granted amicus status. Hr'g Tr. 5:23, Mar. 25, 2008.

The Court also initially granted the New Jersey Building Trade Council's ("NJBTC")

---

[2] At oral argument, counsel for the City of Trenton stated that "[t]here was a breakdown in communication [when] we thought we had given notice [to PKF and] maybe we didn't." Hr'g Tr. 39:1-7, Apr. 25, 2008.

3

motion to intervene because it was one of NJBTC's affiliated member groups that sought and received the certified payroll records from the City, and NJBTC asserted that it was entitled to seek such information on an ongoing basis. (*See* NJBTC Br.) However, because NJBTC later informed the Court that none of its affiliates had any pending OPRA requests for certified payroll records of PKF employees before the City, the Court modified NJBTC's status to amicus.

At oral argument, counsel for the City explained that if the City receives an OPRA request, it is required to respond to it within 7 business days. Counsel stated that the City redacted social security numbers from the records being requested, but maintained that it was not required to notify the parties whose information was being sought or provide those individuals with a hearing to challenge the dissemination of their personal information. *Id.* at 11:16-25. Indeed, Plaintiffs' counsel confirmed that Plaintiffs only discovered that their personal information had been released after the fact. *Id.* at 11:13.

The City sought to join the State of New Jersey as a necessary party to obtain the State's view on what disclosures were mandated by the statute and regulation. Initially, the Court requested that the State participate as amicus, and asked the State to submit a brief as to whether it should be joined in the matter to voice the State's view on the construction of the statute.

During the last hearing on May 19, the parties verified that there were no facts in dispute, and agreed that the only issues before the Court were matters of law.

## II. Discussion

### A. Parties' Arguments

Plaintiffs argue that the names, addresses, and social security numbers of PKF's employees fall within the zones of privacy protected by the United States Constitution and should

4

therefore not be disseminated to third parties who lack a legitimate interest in obtaining this personal information. (Ptf. Br. at 8.) Plaintiffs assert that PKF employees have been harmed in the past as a result of such disclosure, when PKF employees have been harassed by various entities. Plaintiffs fear future harm if their personal information continues to be provided to the public. (*Id.*) Plaintiffs further argue that the privacy interests of PKF employees greatly outweighs the interested unions "total lack of public interest in obtaining the names, addresses and social security numbers of PKF's employees." *Id.* at 9. Plaintiffs add that obtaining the names, addresses, and social security numbers of PKF employees would not aid in the enforcement of prevailing wage laws. *Id.* Plaintiffs further assert that any such disclosure of personal information is in conflict with OPRA, the very statute under which this information has and will be sought. *Id.* at 9-10.

In its brief, the City asserted that N.J.A.C. 12:60-5.1(c)[3] required it to "make available for inspection" the Certified Payroll Records. The City argued further that Plaintiffs should have been required to join the State of New Jersey if it wished to challenge the regulation. However,

---

[3] N.J.A.C. 12:60-5.1(c) provides that:

> The public works contractors and subcontractors shall submit to the public body or lessor which contracted for the public works project the following in a form satisfactory to the Commissioner (see Appendix A, incorporated herein by reference).
>
> 1. A certified payroll record on each public works project.
>
> i. Such record shall be submitted each payroll period within 10 days of the payment of wages.
>
> ii. The public body shall receive, file, store and make available for inspection at its normal place of business and during normal business hours the certified payroll records.

5

Plaintiffs countered in their reply and at oral argument that N.J.A.C. 12:60-5.1(c) only required that the City make the payroll records available to the Department of Labor – not to the public. (Plaint Reply Br. at 3.) Counsel from the Attorney General's Office also maintained at oral argument that the State's position was that the Prevailing Wage Act and the pertinent regulation, did not "require a public body to release personal identifiers, names, addresses, social security numbers, [or] telephone numbers to a third party." Hr'g Tr. 20:1-7, Mar. 25, 2008.

The State argued that joining it in the present action would be improper because the State has no interest in the case and because existing procedural mechanisms are in place for adjudicating OPRA disputes. (State Br. at 4.) Specifically, the State asserts that the Government Records Council ("GRC") and the New Jersey Superior Court possess "concurrent primary jurisdiction . . . to determine the appropriate balance between public access to government records and an individual's reasonable expectation of privacy." (*Id.*) The State further suggests that in light of the important State interests at play, the Court should consider abstaining to allow the GRC and New Jersey Superior Court to have the first opportunity to decide the matter. (*Id.* at 5.)

NJBTC argues that Plaintiffs cannot make out a constitutional claim for a right to privacy because "the disclosure (or non-disclosure) of information is not within any of the fundamental 'zones of privacy' recognized by the U.S. Supreme Court." (NJBTC Br. at 8.) NJBTC further argues that Count II of Plaintiffs' complaint cannot support a claim for injunctive relief because FOIA does not apply to state and local municipalities, and the request for information at issue was made pursuant to OPRA. (*Id.* at 9.) NJBTC therefore asserts that Plaintiffs' complaint should be dismissed in its entirety because the only remaining claim (under OPRA) cannot grant

6

Federal Jurisdiction to Plaintiffs. (*Id.* at 10.) In the event that the Court maintains jurisdiction over Plaintiffs' OPRA claim, NJBTC argues that the only redaction mandated by OPRA with regard to the personal information at issue is for social security numbers. (*Id.* at 12.)

**B.     Mootness**

Despite seeking and being granted intervention in this case, NJBTC has argued that the Court should dismiss Plaintiffs' motion and complaint as moot because no NJBTC affiliates have any outstanding ORPA requests with the City of Trenton for PKF certified payroll records at this time.[4] (NJBTC April 18, 2008 letter, docket # 24.) "In general a case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481 (U.S. 1982)(quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)(quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969))). However, where a case is "capable of repetition, yet evading review," courts will grant an exception to the mootness doctrine. *Id.* at 482. *See also Roe v. Wade*, 410 U.S. 113, 125 (U.S. 1973).

The present case is one that is "capable of repetition, yet evading review." The Court first notes that Plaintiffs filed their complaint and motion for injunctive relief after personal identifiers of PKF employees were released by the City without PKF or its employees ever being notified or given a chance to challenge the release of the information. This release occurred despite an apparent understanding between the City and Plaintiffs that Plaintiffs would be informed once an OPRA request for certified payroll records was made, so that Plaintiffs could oppose the release

---

[4] As noted, after learning that no NJBTC affiliates had any remaining OPRA requests for PKF employees' information in front of the City, the Court converted NJBTC's previous status as intervener to amicus.

of such records. Hr'g Tr. 23, Mar. 25, 2008. In addition, Plaintiffs maintain that OPRA requests are filed on a weekly basis seeking the personal information of PKF employees. This assertion was not disputed by the City or NJBTC. Thus, while as of the last hearing on April 25, there were no pending requests for PKF certified payroll records,[5] it is very likely that such requests will be made in the future. Moreover, counsel for the City stated during oral argument that based upon a conversation he had with someone on the GRC hotline, in the face of another OPRA request for PKF's employees payroll records, he had authorized the release of employee names only, until receiving further guidance from this Court. Hr'g Tr. 41:19-23, Mar. 25, 2008. Thus, at the very least, if the Court were to decline to entertain this matter at this time, PKFs' employees' names would likely be released pursuant to an OPRA request. Further, in light of the City's release of names and addresses in the past, which occurred after the City agreed to not do so without providing Plaintiffs the opportunity to take an action to prevent said dissemination, the Court is not convinced that this type of disclosure will not occur again. There is certainly no legal mechanism to prevent the City from releasing this information. As such, the Court finds that the matter is not moot because it is "capable of repetition, yet evading review."

### C.  Abstention

The State and NJBTC assert that this Court should abstain from ruling on the present case to allow the GRC and Superior Court to have the first opportunity to resolve this dispute. (NJBTC Br. at 3; AG Br. at 5.) Abstention may be appropriate in "special circumstances" where

---

[5] There was an outstanding request for certified payroll records from the Plumbers & Pipefitters, Local 9, an affiliate of NJBTC, at the time of the March 25 hearing, but the City represented that this request did not involve the payroll records of PKF employees. Hr'g Tr. 23, Mar. 25, 2008.

"the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question." *Kusper v. Pontikes*, 414 U.S. 51, 54 (U.S. 1973). Federal Courts should also abstain from hearing a case under the *Younger* Abstention doctrine when: "(1) [there is] pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings [] implicate important state interests; and (3) the state proceedings [] afford an adequate opportunity to raise any constitutional issues." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. Pa. 1994)(*citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

In the present case, no party has suggested that either the GRC or the Superior Court would interpret OPRA or the particular regulation at issue in a way that would preclude reaching the federal constitutional question (privacy rights) put forth by Plaintiffs. To the extent that Plaintiffs assert that OPRA does not mandate the release of these personal identifiers, Plaintiffs point to OPRA's deference to privacy rights secured by the Federal Constitution. (Pl. Reply Br. at 5, docket # 14.) Thus, the heart of Plaintiff's claim is routed in the Federal Constitution.

There are also no "pending or ongoing proceedings" to which the Court may abstain. Even if Plaintiffs were to request the GRC to issue an opinion as to whether the personal identifiers of employees on public works projects were required to be disclosed, it was established during oral argument that the GRC is only permitted to decide whether the records *must* or *need not* be disclosed. Critically, it is uncontested that the GRC is without the power to grant Plaintiffs the relief they seek – a ruling that PKF's employees' personal identifiers *may not* be disclosed to third parties. Under these circumstances, abstention is not warranted. There is no pending proceeding in the New Jersey Superior Court or before the GRC, and even if the GRC

were to become involved in this matter, it could not provide Plaintiffs with the relief they seek.

### D. Whether the disclosure of PKF employees' names and addresses presents a likelihood that PKF employees will suffer a clearly unwarranted invasion of their personal privacy.

"The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). "The Supreme Court has, however, found certain 'zones of privacy' in the amendments to the Constitution . . . ." *Id.* (*citing Roe v. Wade*, 410 U.S. 113, 152-53 (1973)). "[F]rom these zones [the Supreme Court] has specified that the constitutional right to privacy 'protects two types of privacy interests . . . .'" *Id.* "'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 109 (3d Cir. 1987) (*quoting Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). Plaintiffs' claim is based on the first type of interest – avoiding disclosure of personal matters.

OPRA also commands public agencies to "safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. § 47:1A-1. This safeguard was emphasized by former Governor James McGreevey in Executive Order # 21.

To determine whether a particular intrusion into an individual's privacy is justified, "[a court] must engage in the delicate task of weighing competing interests." *Fraternal Order of Police* 812 F.2d at 110 (citing *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 578 (3d Cir. Pa. 1980)). Factors that the court should consider include: "(1) the type of record

requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *Id. (citing Westinghouse*, 638 F.2d at 578); see also *Doe v. Poritz*, 142 N.J. 1, 87-88 (1995).

The facts of this case are very similar to those of *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. United States Dep't of Veterans Affairs*, 135 F.3d 891 (3d Cir. 1998). In *Sheet Medal Workers*, a union requested names, addresses, and social security numbers pursuant to the Freedom of Information Act ("FOIA"), whereas in the present case, the request was made pursuant to New Jersey's Open Public Records Act ("OPRA"). However, this Court finds the Third Circuit's reasoning in that case to be useful and applicable here because the Court of Appeals dealt with the same concerns regarding one's reasonable expectation of privacy in the face of a government records request. As will be discussed, both FOIA and OPRA were enacted to foster transparency in government and both statutes forbid the dissemination of personal information that would amount to an unreasonable invasion of an individual's privacy.

The plaintiff in *Sheet Metal Workers*, the Sheet Metal Workers' International Association, Local Union No. 19 ("the union") monitored "whether federal agencies [were] enforcing private contractors' compliance with the Davis-Bacon Act," which requires "'that all laborers and mechanics working on federally funded construction projects be paid not less than the prevailing wage in the locality in which the work is performed.'" *Id.* at 993 (quoting *International Brotherhood of Electrical Workers Local Union No. 5 v. United States Dep't of Housing &*

11

*Urban Dev.*, 852 F.2d 87, 88 (3d Cir. 1988)). The union filed suit after the Department of Veterans Affairs refused to supply the union with the names, addresses, and social security numbers of employees of a construction company that had been hired for a specific job. In refusing to supply the union with the employees' information, the Department of Veteran Affairs relied "primarily on §§ 552(b)(6)[6] and 552(b)(7)(C) of the Freedom of Information Act." The union asserted the following reasons for wanting the information:

> (1) to ascertain whether the contractor is inflating the numbers of employees actually working on the job site; (2) to compare the employees' listed job classifications with the work actually performed on the job site; (3) to determine whether the contractor is using the same employee for two different classifications on the same job; (4) to check the consistency over time of the rate of pay for a particular classification; (5) to determine whether the employer is using the proper ratio of mechanics to journeymen apprentices; and (6) to determine if the apprentices are properly registered with the State Director of Apprenticeship and Training, whether they are working out of their classification, and whether they are receiving the proper rate of pay.

*Id.* at 894.

The union also argued that:

> there is a strong public interest in monitoring agency enforcement of the prevailing wage law because the information sought contributes significantly to public understanding of the operations or activities of the government. Congress, the union argues, enacted both the Davis-Bacon Act and the Copeland Act to facilitate regulation of contractors. According to the union, the records requested would make it easier to rectify any mistake or omission that government agencies might make during such enforcement activities. Redacted payrolls, the union complains, require blind acceptance of the contractor's unverifiable reports.

*Id.* at 902-03. In addition the union contended that the privacy interests of the employees at stake were "insignificant because (1) the addresses are available from other public sources; (2) the

---

[6] § 552(b)(6) provides an exemption to the FOIA's general disclosure requirements for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

12

employees' wage scales are posted publicly at the job site; and (3) the employees received no promises of confidentiality with respect to the requested data." *Id.* at 903.

In beginning its analysis, the court in *Sheet Metal Workers* noted that "[r]esolution of a case under § 552(b)(6) "depends on a discrete inquiry: whether the disclosure of [the requested information] would constitute a clearly unwarranted invasion of personal privacy of the bargaining unit employees within the meaning of the FOIA." *Id.* at 897 (quoting *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 494 (U.S. 1994). The court applied a three-prong inquiry articulated by the United State Supreme Court in *United States Dep't of Defense v. Federal Labor Relations Authority*:

> First, in evaluating whether a request for information lies within the scope of a FOIA exemption . . . a court must balance the public interest in disclosure against the interest Congress intended the exemption to protect.
>
> Second, the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'
>
> Third, whether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made. Because 'Congress clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest in a particular document,' except in certain cases involving claims of privilege, 'the identity of the requesting party has no bearing on the merits of his or her FOIA request.'

*Id.* The Third Circuit in *Sheet Medal Workers* also observed two then-recent U.S. Supreme Court decisions in which the Court expressed "both an increased appreciation for employees' privacy and a concomitant decrease in the belief that disclosure of personal information for the purpose of monitoring Davis-Bacon Act compliance serves a public interest." *Id.* at 901. (discussing the cases of *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S.

749 (U.S. 1989) and *United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487 (U.S. 1994)).

The Third Circuit felt that the union "overestimate[d] the public interest to be served by disclosure." *Id.* at 903. According to the court, "'[t]he only relevant public interest in disclosure to be weighed . . . is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.'" *Id.* (quoting *U.S. Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 494 (U.S. 1994)). The court further found "[t]he release of names, addresses, and similar 'private' information [to] reveal[] little, if anything, about the operations of the Department of Veterans Affairs." *Id.* The court also noted that "[a]fter the decisions in *Reporters Committee* and *Department of Defense*, no court of appeals ha[d] given much weight to the monitoring function [and stated that it was] compelled to do likewise." *Id.* Notwithstanding the diminished consideration given to the union's asserted "monitoring interest," the court found in any event that, "providing the requested information -- the names and addresses of the individual workers -- would not enhance agency enforcement of prevailing wage laws." *Id.* The court explained:

> Some Davis-Bacon Act violations appear clearly on the face of the payroll records regardless whether names are shown, e.g., the payment of a properly classified worker at a lower rate than the prevailing rate for their classification. To insure compliance, the union need only compare job classifications to pay rates to determine if the contractor pays its employees the prevailing wage. Furthermore, other violations remain undetected irrespective whether names appear, e.g., (1) the improper classification of a worker which results in payment at a lower than prevailing rate; and (2) the proper classification and compensation of a worker who then pays the contractor a "kick-back." Divulging names and addresses will have no beneficial effect on the union's ability to detect these violations.

*Id.* As a result the Third Circuit was "reluctant to overstate the public interest served by

14

disclosure in light of diminishing importance attributed to the monitoring function and the unproven ability of the requested information to assist in the enforcement of prevailing wage laws." *Id.* at 904. The court also believed there was less intrusive methods for collecting the desired information such as "(1) dispensing fliers to workers as they arrive and leave job sites or posting signs or advertisements designed to solicit information from workers about possible wage law violations, and (2) using existing information to compare job classifications with pay rates." *Id.*

In weighing the privacy interest of the employees concerning their names and addressees, the court stated that "[p]roliferation of information about private citizens implicates neither the spirit nor the purpose of the Freedom of Information Act." *Id.* The court continued that "even a slight privacy interest will tip the scales in favor of non-disclosure." *Id.* The court heavily weighted the "significant privacy concerns [that] attach[] to the home [in addition to the] employees' interest in avoiding a barrage of unsolicited contact." *Id.* (*citing Dep't of Defense*, 510 U.S. at 500). The court further recognized the danger that once the union were to gain possession of the employees' personal information, the information would be available to others and could be "misappropriated by marketers, creditors, solicitors, and commercial advertisers, eroding the employees' expectation of privacy." *Id.* at 905. (*citing Dep't of Defense*, 510 U.S. at 501). "[T]he prospect of this unwarranted intrusion counsel[ed the court] against disclosure." The Third Circuit ultimately held that:

> [t]he privacy interest of employees in the non-disclosure of their names and addresses substantially outweighs the slight public interest put forth by the union. Dissemination of the requested data to the union would ultimately result in an unwarranted invasion of personal privacy. To the extent that releasing this information serves a public interest, it is too attenuated to warrant a contrary

15

> result. Any other conclusion would be at odds with the core purpose of the Freedom of Information Act, namely a significant contribution to public understanding of the operations or activities of the government.

*Id.*

This Court also notes the GRC's opinion in *Rich Bernstein v. Borough of Park Ridge Custodian of Records*, 2005-99, where the GRC found that the Borough of Park Ridge ("the borough") properly denied the plaintiff's (an entrepreneur seeking to start up an electric dog fence business) OPRA request for names and addresses of dog license owners in the Borough. The GRC noted OPRA's as well as Executive Order 21's mandate that public agencies safeguard individuals' personal information, when release of this information would result in a violation of "the citizen's reasonable expectation of privacy." The GRC then went on to balance the interests in disclosure of the requested names and addresses against the potential violation of dog owner's reasonable expectation of privacy, applying the *Westinghouse* factors, as outline above, and as the New Jersey Supreme Court had approved in *Doe v. Poritz*, 142 N.J. 1, 87-88 (1995). The GRC recognized that dog license owners could be harmed through unsolicited contact from the plaintiff as well as others who might gain access to the lists. The Council opined that such unsolicited contact could result in diminishing individuals' trust in public agencies to protect their privacy. Further, the plaintiff's desire for these names and addresses was specifically for commercial reasons, which weighed in the Council's decision.

Considering the *Westinghouse* factors, and the reasoning as set forth in *Sheet Medal Workers* in addition to the concerns expressed by the GRC in *Bernstein v. Borough of Park Ridge*, the Court finds that Plaintiffs have made the necessary showing that the dissemination of

PKF's employees' names, addresses, and other personal identifying information[7] constitutes a violation of these employees' "reasonable expectation of privacy." The Court is inclined to give little weight to NJTBC's stated interest in this case – to "preserve[] area wage and safety standards and the general promotion of worker rights." (NJBTC Br. at p. 3.) NJBTC possesses no government mandate to enforce wage laws. Indeed, the New Jersey Department of Labor handles this responsibility. However, to the extent that there is a public interest in the enforcement of wage and safety standards, NJBTC has offered no evidence to convince the Court that the release of PKF's employees' personal identifiers would significantly advance this purpose. The Court is also convinced that the release of these identifiers would not serve the core purpose of OPRA – to "maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." *Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp.*, 183 N.J. 519, 535 (2005)(citation omitted). Indeed, courts have found the disclosure of employees' names and addresses to reveal little of the inner workings of government. *See Sheet Medal Workers*, 135 F.3d at 903; *Dep't of Defense*, 510 U.S. at 495; *Painting Indus.*, 26 F.3d at 1486. Less intrusive means for collecting the desired information is also available to the NJTBC, as was articulated in *Sheet Medal Workers* and discussed in this opinion. *See Sheet Medal Workers*, 135 F.3d at 904.

Against a weak public interest in the disclosure of PKF employees' names and addresses, the Court weights the privacy interests at stake. Special consideration has long been given to the privacy interests associated with the home. *Dep't of Defense*, 510 U.S. at 501; see also *Sheet*

---

[7] As noted, the City never disseminated or sought to disseminate employees' social security numbers.

17

*Medal Workers,* 135 F.3d at 904 (weighing heavily "[t]he significant privacy concerns attached to the home and employees' interest in avoiding a barrage of unsolicited contact"). The Court fears that once the personal information at issue is released, there would be nothing to stop others from obtaining it to harass these employees. *See Sheet Medal Workers,* 135 F.3d at 905. (discussing the possibility that names and addresses could be "misappropriated by marketers, creditors, solicitors, and commercial advertisers, eroding the employees' expectation of privacy"). The very real possibility of such an intrusion militates against disclosure. *See id.*

### III. CONCLUSION

NJBTC has failed to establish how the release of PKF's employees' names and addresses would serve a legitimate public interest. By contrast, the Court is convinced that the dissemination of this information would put these employees' at risk of having their privacy unreasonably invaded. Disclosure of employees' personal information to third parties while revealing nothing about the inner workings of government, not only violates these employees' reasonable expectation of privacy under the Federal Constitution, but also does nothing to advance the purpose of OPRA, which is to promote transparency in government. Accordingly, the Court grants Plaintiffs' request for injunctive relief.

Dated: June 16, 2008

                                                               s/Garrett E. Brown, Jr.
                                                               GARRETT E. BROWN, JR., U.S.D.J.